**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-00583-WDM

DELL R. MCDERMOTT,

        Plaintiff

v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant

_____

**MEMORANDUM OPINION AND ORDER**
_____

Miller, J.

This action is brought pursuant to the Social Security Act, 42 U.S.C. § 405(g), by Plaintiff Dell R. McDermott, (hereinafter "Plaintiff") for judicial review of a final decision by the Commissioner of Social Security (hereinafter "the Commissioner"). I have reviewed the record and the parties' written and oral arguments. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

Background

On September 22, 2003, Plaintiff filed his application for Social Security disability insurance benefits as a result of the effects of a shooting as a youth to his right foot resulting in multiple surgeries, fusion of the bones, significant joint and nerve damage, and

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this action. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

pain of the right lower extremity. Plaintiff also claimed severe pain in the cervical and lumbar spine and both knees. The plaintiff has been diagnosed with keratoconus, astigmatism, and myopia of the eyes; depression; diabetes; high blood pressure; and asthma.

The Social Security Administration (SSA) denied benefits initially, and Plaintiff timely filed for a hearing with an Administrative Law Judge (ALJ). A hearing was held on December 14, 2004 in Colorado Springs, Colorado. The ALJ, after considering the record and the testimony, denied benefits to Plaintiff in a written decision dated February 7, 2005. The SSA's Appeals Council declined review of the ALJ's determination, making it the Commissioner's final decision for purposes of judicial review. The Court finds that Plaintiff has exhausted all appropriate remedies, and the Court exercises jurisdiction pursuant to 42 U.S.C. Section 405(g).

Plaintiff was born on August 10, 1969. Administrative Record at 53. He continued his education up to one completed year of college. *Id.* at 64. His previous work has been primarily as a grocery store clerk, machinist, truck driver, and running his own motor vehicle accessory service and sales company.[2] *Id.* at 58.

Plaintiff asserts that he became disabled around March or April 2001, when in the course of his job as a truck driver, an 800 pound load fell on his back. *Id.* at 647. Plaintiff

---

[2]The business apparently began as a home side business around 2000, with Plaintiff offering parts sales and repair service for motorcycles and ATVs. After his injury, he outsourced the repair work and worked mostly on the phone. The business failed in 2003. Record at 92.

also had a preexisting injury to his right ankle and leg, from being shot when he was 13 years old, for which he has had several surgeries. *Id.* at 93. The most recent ankle surgery was in 1996. *Id.* at 226-28, 364-65. The ankle is now fused. *Id.* at 93.

The record reveals significant evidence of a chronic and deteriorating condition in his right lower extremity, including wasting of the muscles and degeneration of the graft and joint sites. *Id.* at 267, 360. A nerve conduction report from July 2001 found denervation of the lower extremities consistent with the gunshot wound and suggestive, but inconclusive, evidence of radiculopathy in the spine. *Id.* at 267. An MRI from August 2001 shows two abnormal discs at L4-L5 and L5-S1. *Id.* at 264.

Plaintiff was treated by Dr. Dale Flueger, a chiropractor orthopedist from approximately May 2001 to January 2002. Dr. Flueger completed a functional assessment in January 2002 in which he opined that Plaintiff could perform only 3-4 hours of sedentary work a day, 30 minutes of sitting before changing position, with limitations on walking distances, sitting and standing, and various postural restrictions. *Id.* at 304-05. Dr. Brian Beach, Plaintiff's primary care physician from 2001 to 2003, also performed a functional assessment in June 2002, in which he opined that Plaintiff could not stand, walk or sit for even one hour in a day. *Id.* at 381. Dr. Beach prescribed pain medication, a TENS unit, and anti-depressants. *Id.* at 377, 383, 389.

In September 2003, Plaintiff visited Dr. Ronald Laub, a pain specialist. *Id.* at 370. In his evaluation, Dr. Laub noted that an MRI showed "broad based disk bulge with central protrusions causing moderate stenosis" at L4-5 as well as an EMG showing evidence of radiculopathy at L4-5 and L5-S1 foramina. *Id.* at 371. He recommended injections, weight

loss, medications, and daily exercise such as recumbent bike riding.  *Id.*  In October 2003, Plaintiff also consulted with Thomas Higginbotham, D.O., for an evaluation.  *Id.* at 405.  Based on a physical examination and review of Plaintiff's medical records, Dr. Higgenbotham diagnosed keratoconus, lumbar disc disease, L4-5 and L5-S1 with extrusion and possible L5 radiculopathy, arthritis of major weight bearing joints, ankylosing of right ankle, depression, hypertension, diabetes, and chronic cervicothoracolumbar myofascial strain patterns.  *Id.*  Dr. Higgenbotham opined that Plaintiff could work no more than four hours in an eight hour day sitting, with frequent position changes, could walk continuously for 15 minutes or intermittently up to two hours a day, could stand continuously for 20 minutes or intermittently up to two hours a day, and should avoid continuous lifting but could occasionally lift up to 35 pounds.  *Id.* at 409.

In February 2004, an x-ray showed severe destruction and narrowing in Plaintiff's ankle but no abnormalities in his back.  *Id.* at 552.  However, an MRI in April 2004 showed degeneration, disc bulging and herniation with possible effect on the left L5 nerve root. *Id.* at 582.  In February 2004, Plaintiff was examined by Dr. Sherman Yu, who determined that Plaintiff could stand and walk less than two hours a day and sit for less than six hours and had to alternate sitting and lying down.  He could lift up to 50 pounds and carry up to 20 pounds, and had limitations on bending, stooping, and crouching.  *Id.*  at 423-24.  In March 2004, Dr. David Garcia, a podiatrist, examined Plaintiff's foot and ankle and made several recommendations, opining that "I don't feel the patient can tolerate any job which would require any standing, walking, lifting or carrying."  *Id.* at 428.  He also diagnosed hammer toes, arthritis, and other conditions.  *Id.*  A Functional Capacity Assessment by

a Social Security physician, based only on review of Plaintiff's records, in March 2004 determined that he could occasionally lift/carry 20 pounds, frequently lift/carry 20 pounds, stand/walk at least two hours, sit about six hours, and had unlimited ability to use foot/hand controls.  *Id.* at 443.

Another Functional Capacity Evaluation was performed in March 2004.  *Id.* at 515. The evaluator determined that Plaintiff was exaggerating his symptoms and engaging in inappropriate illness behavior.  *Id.* at 517.  The evaluator opined that Plaintiff could sit occasionally (30 minutes at a time up to 33% of the day) and stand/walk frequently (1 hour at a time up to 66% of the day), should avoid balancing and climbing, and could use hand/foot controls.  *Id.* at 518-19.  Dr. Richard Meinig, reviewing the April 2004 MRI and FCE, noted disc issues but recommended non-surgical treatment, including injections.  *Id.* at 595.

Plaintiff's primary physician, Dr. Ripley Hollister, prescribed a manual wheelchair in February 2004 because of the back and foot issues.  *Id.* at 551.  Plaintiff received a prescription for a power wheelchair in May 2004.  *Id.* at 580.

Reentry Rehabilitation Services, Inc., completed an evaluation of Plaintiff in April 2004 with an update in December 2004.  *Id.* at 91, 122.  The rehabilitation counselor reviewed Plaintiff's medical records and completed various tests.  Plaintiff tested at the 12.9 grade level in reading, 9.6 grade level in math, and 8.6 level in spelling.  *Id.* at 129. The specialist opined he could work only at the sedentary exertional level but would not be able to maintain a full work schedule.  *Id.* at 132.  Dr. Meinig reviewed the April 2004 Reentry report and the FCE and concluded that the assessments were "fairly accurate."

*Id.* at 579.

## Administrative Proceedings

At his hearing, Plaintiff testified that in June 2001, the pain from his foot was such that he could not walk on it. *Id.* at 646-47. In addition, because of the foot and back pain, he was prescribed a wheelchair. *Id.* at 648. He stated that he was currently being treated for asthma, chronic depression, high blood pressure, and diabetes, but was not seeing a psychiatrist because he could not afford it. *Id.* at 649-50. He does, however, take medication for the depression. *Id.* at 665. He testified that he could not manipulate small parts because such activity caused shooting pains from his fingers to elbows. *Id.* at 654. He explained that he could not sit for more than a half hour and then was only relieved by lying down and could not stand or walk for any period of time. *Id.* at 654-55. He takes pain medication but it causes drowsiness and he sleeps 3-4 hours a day. *Id.* at 655-56. He helps his wife a little with getting their children off to school, then watches TV for most of the day, then helps his children a little with their homework. *Id.* at 657. He sleeps on the sofa because he cannot use the stairs to his bedroom and is unable to sleep well. *Id.* at 657-58. He does no household chores but can prepare simple meals and does some grocery shopping with his wife. *Id.* at 658-59. He testified that he has constant sharp and dull pain radiating from his lower back and in his leg and foot. *Id.* at 659-60. He asserts that he cannot work because he cannot stand and has to lie down every thirty minutes. *Id.* at 660-61.

Plaintiff operated a small business out of his home for several years, assisted by his wife and children, which ultimately failed. The business involved essentially catalogue

sales of motor vehicle parts. Plaintiff worked on the business from the couch, which for him primarily involved talking on the telephone to customers and giving advice. *Id.* at 677.

In addition, Plaintiff's wife testified about Plaintiff's activities. She explained that they have little in the way of a social life and that, although Plaintiff tries to attend church, he stays for only a portion of the service and then has to lie down. *Id.* at 670-71. She testified that coughs or sneezes caused Plaintiff to cry from the pain and that he spent most days lying on the couch. *Id.* at 673-74. She also testified that Plaintiff could not read or write well. *Id.* at 676.

A vocational expert testified at the hearing. The VE testified as to the demands of Plaintiff's past work and opined that Plaintiff had few if any transferable skills. *Id.* at 681. He ruled out all past relevant work, with the exception of the motor vehicle accessories sales as performed by Plaintiff, not as typically performed. *Id.* at 682. However, the VE testified that there were other jobs in the economy that a person with Plaintiff's age, education, and skills could perform if that person were able to work at the light level of exertion with no more than two hours of standing or walking. *Id.* In response to a second hypothetical, involving sedentary work with the ability to alternate positions between sitting or standing at will, the VE testified that there were also jobs existing in the economy. *Id.* at 683. However, the VE also testified that if the individual could not work more than four hours in an eight hour day or was required to frequently lie down, no jobs would be available. *Id.* at 683-84.

In the decision, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since the alleged

     onset of disability.  *Id.* at 35.

2. Plaintiff had severe impairments, specifically degenerative disc disease, right ankle injury with fusion, knee pain, and keratoconus.  *Id.*  Plaintiff's high blood pressure and asthma were well controlled and were, along with epicondylitis of the elbow and depression, less than severe impairments.  *Id.* at 31.

3. None of the impairments, alone or in combination, met the criteria of any listed impairment.  *Id.* at 31.

4. In determining Plaintiff's residual functional capacity, the ALJ found Plaintiff's testimony of disabling pain not credible.  *Id.* at 32.  Specifically, the ALJ found there was no medical condition consistent with the degree of alleged pain in Plaintiff's back.  In addition, Plaintiff goes shopping without his wheelchair and at least one physician recommended against use of the wheel chair.  The physician reported in a consultation note that he had observed Plaintiff walking 20-25 yards without having to stop.  In addition, in a functional capacity evaluation on March 19, 2004, Plaintiff failed two of three credibility criteria and a consultative medical expert opined that Plaintiff was capable of performing work in excess of his claimed capacity.  *Id.* at 33.

5. The ALJ found that Plaintiff has the residual functional capacity to perform light exertional work, lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking no more than 2 hours, and occasional balancing, kneeling, stooping, crouching, or crawling.  *Id.* at 35.

6. Plaintiff was not precluded from performing his past relevant work in sales of motor vehicle accessories and was also capable of performing other light and sedentary jobs existing in the economy.  *Id.* at 39.

<u>Standard of Review</u>

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Id.* (citations omitted).  The

failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

Plaintiff makes four specific arguments on appeal: (1) the ALJ failed to fully develop the record concerning Plaintiff's learning disabilities and educational deficits and to correspondingly develop the record on the availability of jobs in motor vehicle accessory sales; (2) the ALJ failed to provide hypothetical questions that accurately reflected Plaintiff's limitations; (3) the ALJ erred in failing to give proper weight to the opinions of treating physicians; (4) the ALJ did not demonstrate that jobs existed in the economy in sufficient numbers that Plaintiff can perform. Plaintiff also argues generally that the ALJ failed to properly consider all of the substantial evidence as a whole which was favorable to Plaintiff.

1. <u>Failure to develop the record</u>

Plaintiff argues that the ALJ should have further developed the record as to Plaintiff's alleged learning deficits. Plaintiff's wife testified that he had been in special education classes in school; also the Reentry report identified him as having lowered math and spelling skills. I disagree, and find that there is substantial evidence to support the determination that the Plaintiff had the educational background to perform the jobs identified by the vocational expert.

Plaintiff also argues that the record was not developed sufficiently with respect to the ALJ's finding that Plaintiff could perform his past relevant work in motor vehicle

accessory sales, as he previously performed it. I agree. The VE specifically testified that the way that Plaintiff performed this work was not how it was typically performed in the economy. In addition, there is no evidence that jobs of this kind exist in any significant number. The record does not support a finding that Plaintiff could go back to doing this work. However, since the ALJ's decision also rested upon a finding that he could perform other jobs, and the VE's evidence establishes that these jobs do exist in significant numbers in the local and national economy, this alone does not merit reversal.

2. <u>Hypothetical questions</u>

Plaintiff contends that the hypothetical questions to the VE were deficient because the record was not fully developed with respect to his educational abilities. For the reasons discussed above, I disagree.

Plaintiff also argues that the hypotheticals to the VE included an RFC that was not supported by the evidence. Because I find that the ALJ erred by not properly evaluating the opinions of various medical sources, discussed below, I decline to address this issue.

3. <u>Rejection of treating physician opinion</u>

The record contains conflicting evidence as to whether Plaintiff can stand or walk for any prolonged period and whether he can sit for more than 30 minutes without lying down or otherwise changing position; several medical sources opined that he could not sustain work for an eight-hour work day or maintain employment without missing work. Plaintiff argues that the ALJ failed to properly evaluate the opinions of treating physicians and other medical sources. I agree.

The opinion of a treating source is entitled to "controlling weight" if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188). If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* (quoting SSR 96-2p). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301. If the ALJ rejects the opinion of a treating medical source completely, "he must then give 'specific legitimate reasons' for doing so." *Id.* at 1303. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1983 (10th Cir. 2004) (citations omitted).

I find that the ALJ did not consider the pertinent factors when considering several of the medical source opinions of record and did not provide specific legitimate reasons for rejecting several of the opinions. The ALJ did not review the *Watkins* factors with respect to Dr. Beach's opinion; Dr. Beach is undisputably a treating physician. In addition, it is not clear what weight, if any, the ALJ gave to a treating and non-treating examining medical sources. Although the ALJ notes Dr. Fluegel's opinion (referred to as "a New York chiropractor"), she incorrectly recites his conclusion. Dr. Fluegel opined that Plaintiff could sit no more than 3-4 hours in a day (and could work no more than 4 hours a day), but the ALJ states that Dr. Fluegel's opinion was that Plaintiff could sit 6 hours a day. Dr. Fluegel appears to be a treating chiropractor (not an acceptable medical source but still entitled to consideration), but the ALJ did not identify how much, if any, weight she gave his assessment. *See* SSR 06-03p (identifying factors to consider when evaluating sources other than accepted medical sources). The ALJ also does not mention the opinion of Dr. Garcia (a podiatrist), which concluded that Plaintiff could not work any job that required standing, walking, lifting, or carrying. Accordingly, remand is appropriate for proper consideration of the treating source and other opinions.

4.  <u>Failure to establish jobs existing in the national economy</u>

Plaintiff also argues that the evidence supports a finding that he cannot work more than four hours a day or must lie down during the day and that the VE testified no jobs were available given these limitations. Since I am remanding the case in order to permit correction of the omissions in connection with the medical source opinions, I decline to consider this argument at this time.

## Conclusion

For the reasons discussed above, I find that the Commissioner's determination that Plaintiff is not disabled is not supported by substantial evidence in the record as a whole and is not based on correct legal standards. Accordingly, this case is remanded to the Commissioner for proceedings consistent with this order.

DATED at Denver, Colorado, on March 22, 2007.

                                                BY THE COURT:

                                                s/ Walker D. Miller
                                                United States District Judge